IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VANESSA RANSOM-ELLISON | : | CIVIL ACTION |
| | : | |
| v. | : | No. 24-6308 |
| | : | |
| THE CHILDRENS HOSPITAL OF | : | |
| PHILADELPHIA | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                        **February 17, 2026**

Plaintiff Vanessa Ransom-Ellison brings claims under the Americans with Disabilities Act (ADA) and the Philadelphia Fair Practices Ordinance (PFPO) against her former employer Defendant The Children's Hospital of Philadelphia ("CHOP") for disability discrimination and retaliation related to her termination, CHOP's failure to hire her, and its failure to accommodate her disability. CHOP moves for summary judgment on all Ransom-Ellison's claims. The Court will grant CHOP's motion in full because the claims present no genuine disputes of material facts, and each claim fails as a matter of law or for lack of sufficient evidence.

**BACKGROUND**

Ransom-Ellison suffers from anxiety and depression. Ransom-Ellison Dep. 101:17-18, Dkt. No. 15-7. In June 2019, Ransom-Ellison started working as a Retail Pharmacy Technician for CHOP. *Id.* at 31:2-33:23. During her employment, she worked a rotating schedule with each shift spanning somewhere between 8:00 a.m. to 9:00 p.m. *Id.* at 45:16-24; 46:1-6. In July 2022, she went on Family and Medical Leave Act (FMLA) leave which expired in November 2022. *Id.* at 113:10-24, 114:1-17; Alston Decl. ¶ 13, Dkt. No. 15-9. Ransom-Ellison also took Short-Term Disability leave at the same time. Ransom-Ellison Dep. 122:15-123:6. Sometime in August 2022, she began receiving counseling from Nakira Darden. *Id.* at 133:14-20.

1

On October 26, 2022, Darden sent a letter to CHOP titled "Return to Work Accommodation" which requested Ransom-Ellison's daily work schedule to not go past 5:30 p.m. to allow her to receive treatment twice a week. Darden Letter, Dkt. No. 15-7 at 438. The letter also stated the set schedule was necessary because the days on which Ransom-Ellison receives treatment vary week to week. *Id.* On November 15, 2022, Ransom-Ellison met with her CHOP supervisors to discuss her accommodation request. Ransom-Ellison Dep. 152:18-154:20. At this meeting, Ransom-Ellison also requested not to work before 9:00 a.m. for childcare reasons which was granted. *Id.* at 209:2-21; Howell Decl. ¶ 11, Dkt. No. 15-10. On November 18, 2022, CHOP staff met with Ransom-Ellison again and explained they could not accommodate her request as written. Ransom-Ellison Dep. 205:5-206:8. CHOP did not grant Ransom-Ellison's specific request because it claimed exempting her from the Retail Pharmacy's rotating schedule system would be inequitable. Alston Decl. ¶ 15.

CHOP instead offered four alternatives: (1) Ransom-Ellison will "provide 4-6 week advance notice of which two days of the week she would not be able to work beyond 5:30 PM as part of the accommodation request. Pharmacy [L]eadership will work to ensure CHOP can accommodate these two days of the week that are provided in writing via email to Pharmacy Leadership with a 4-6 week advance notice"; (2) she "has the option to change role to Pharmacy Logistics Technician. CHOP can add the shift of Monday through Friday from 9 AM - 5:30 PM, as this shift does not currently exist, to accommodate the employee for the next 3 months. This role change would be a modification in pay-grade and [her] hourly rate would be $25.03/hour while in this role"; (3) she "has the option to change to a part-time position of 0.6 FTE (48 hours per pay-period) where shifts to include the following: a. Two weekdays per week; shift hours would be 9AM-5:30 PM and b. Every other weekend (Saturday and Sunday); shift hours could be 8:30 AM- 5 PM, or 9:30 AM- 6 PM"; and (4) she "has the option to change to part-time/per diem position of 0.2 FTE (1 day a week): Shift would

be every Sunday; shift hours 8:30AM-5PM or 9:30AM – 6PM." Accommodation Follow-Up Email, Dkt. No. 15-7 at 440-41.

CHOP offered these options verbally at the November 18, 2022 meeting then sent Ransom-Ellison an email memorializing these options in writing later that day at her request. *Id.* The email listed each of these four options then requested Ransom-Ellison response by November 21, 2022. *Id.* Ransom-Ellison never responded to the email to reject or accept the alternative and never engaged in further discussions with CHOP on this issue. Ransom-Ellison Dep. 234:4-13, 241:23-24. Ransom-Ellison did extend her short-term disability leave until January 20, 2023. Disability and Leave Approval Email, Dkt. 15-7 at 444.

On November 22, 2022, CHOP decided to fill Ransom-Ellison's Retail Pharmacy Technician position "in order to sustain operations given the increase in the census that was occurring and that was expected to occur given the fall/winter upper respiratory season that had already commenced." Patel Dep. 31:2-13. On December 15, 2022, CHOP sent Ransom-Ellison a letter stating it was going to hire a replacement for her position and she would be terminated if she did not find another position with CHOP after her leave has expired. Notice to Post Email, Dkt. No. 15-7 at 442-43. CHOP hired two people as Retail Pharmacy Technicians: Jonathan Williams and Leandra Cruz. Hiller Decl. ¶¶ 8-9. Jonathan Williams interviewed for the position on August 29, 2022, received an offer on December 5, 2022, and commenced employment on December 27, 2022. *Id.* Leandra Cruz applied for the position on November 23, 2022, interviewed for the position on December 20, 2022, received her offer on December 28, 2022, and commenced employment on January 23, 2023. *Id.*

In late December 2022 and early January 2023, Ransom-Ellison applied for the positions of Retail Pharmacy Technician, Retail Pharmacy Logistics Technician (otherwise known as Retail Pharmacy Assistant), Pharmacy Informatic Analyst, and Patient Services Representative with CHOP but was not hired. *Id.* ¶¶ 6, 10-12. The members of CHOP's Talent Acquisition team who handled

3

Ransom-Ellison's applications claim they had no knowledge of Ransom-Ellison's health condition, medical leave, or request for accommodation. *Id.* ¶ 13. Ransom-Ellison's Short Term Disability leave ended on January 20, 2023. Alston Decl. ¶ 28. On February 3, 2023, Ransom-Ellison was officially terminated because she had not acquired another position with CHOP. Termination Letter, Dkt. No. 15-9 at 57.

**STANDARD**

A court will grant summary judgment if a moving party can establish "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). The moving party bears the initial burden of identifying the parts of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to show there is a genuine issue of material fact requiring the case to proceed to trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is "material" if it could affect the outcome of the suit—as determined based on the substantive law governing the issue—and a dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. "Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005) (quoting *Hedberg v. Ind. Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995)).

In reviewing a motion for summary judgment, a court must "view the facts in the light most favorable to the non-moving party and [draw] all reasonable inferences in that party's favor." *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 345 (3d Cir. 2022) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). A court is to

consider the parts of the record cited by the parties—such as depositions, documents, and affidavits—and may consider other parts of the record.  Fed. R. Civ. P. 56(c).

**DISCUSSION**

CHOP argues it should be awarded summary judgment on Ransom-Ellison's failure to accommodate, discriminatory and retaliatory termination, and failure to hire claims.  The Court will grant summary judgment in full because it identifies no genuine disputes of material facts for all three claims, the failure to accommodate and hire claims should be dismissed as a matter of law, and the termination claim fails due to insufficient evidence.  The Court will address the failure to accommodate, discriminatory and retaliatory termination, and failure to hire claims in turn.

The Court first turns to Ransom-Ellison's failure to accommodate claim.  Employers must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A).  To plead a prima facie claim of failure to accommodate under the ADA, a plaintiff must allege "(1) she was disabled and her employer knew it, (2) she requested an accommodation or assistance, (3) her employer did not make a good faith effort to assist, and (4) she could have been reasonably accommodated." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (cleaned up).  "Reasonable accommodations" are defined as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position."  29 C.F.R. § 1630.2(o)(1)(ii).  Failure to accommodate claims brought under the PFPO are analyzed in the same way as those brought under the ADA. *See Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 141 (E.D. Pa. 2020).

Both the employer and the employee have a duty to engage in an interactive process under the ADA. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 312 (3d Cir. 1999). When the employer has notice of an employee's disability and desire for accommodation, the employer must request any additional information which it believes it needs. *Id.* at 315. However, "an employer cannot be faulted if after conferring with the employee to find possible accommodations, the employee then fails to supply information that the employer needs or does not answer the employer's request for more detailed proposals." *Id.* at 317. "[C]ourts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary. . . . A party that fails to communicate, by way of . . . response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Id.* at 312 (quoting *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir. 1996)); *see, e.g., Morrone v. UGI Utilities, Inc.*, No. CIV. A. 99-36, 2000 WL 92341, at *4 (E.D. Pa. Jan. 27, 2000) (granting summary judgment against a plaintiff because the "plaintiff repeatedly failed to respond to defendant's attempts to explore possible accommodations").

It is undisputed that Ransom-Ellison and CHOP began to engage in the interactive process. On October 26, 2022, CHOP had notice of Ransom-Ellison's request for reasonable accommodation and met with her on November 15th and 18th to discuss her request. CHOP did not want to grant Ransom-Ellison her requested accommodation of set work hours to end at 5:30 p.m. but instead offered multiple alternatives such as scheduling her to end work at 5:30 p.m. ahead of time on certain days and moving her to part-time status. Ransom-Ellison never responded to CHOP to reject or accept the alternatives or engaged in further discussion on why these options were insufficient. She was responsible for the breakdown in the interactive process which defeats her failure to

accommodate claim because she cannot prove CHOP did not make a good faith effort to identify a reasonable accommodation.

Ransom-Ellison argues her requested accommodation was reasonable because it would not have interfered with her ability to perform the essential functions of her job and was not clearly ineffective or outlandishly costly. She asserts CHOP as the employer had the burden to contemporaneously articulate its business reason for rejecting her specific requested accommodation. The Court has found no authority and Ransom-Ellison cites no case law that supports this rule.

While Ransom-Ellison is entitled to a reasonable accommodation, she is not entitled to her *exact* preferred accommodation. "[A]n employee cannot make [the] employer provide a specific accommodation if another reasonable accommodation is instead provided." *Solomon v. Sch. Dist. of Philadelphia*, 532 F. App'x 154, 158 (3d Cir. 2013) (quoting *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800-01 (6th Cir. 1996)); *Taylor*, 184 F.3d at 317 ("The interactive process does not dictate that any particular concession must be made by the employer . . . ."). Ransom-Ellison requested to work a set schedule from 9:00 a.m. to 5:30 p.m. Then CHOP responded by offering four alternative reasonable accommodations which appear to meet the substance of her request. Ransom-Ellison was not entitled to her specific request for a set work schedule and was still obligated to engage in the interactive process to identify some reasonable accommodation that was acceptable to her and to CHOP.

Ransom-Ellison points to two out-of-district cases from over twenty years ago to support her argument: *Norman v. Univ. of Pittsburgh*, No. CIV.A. 00-1655, 2002 WL 32194730 (W.D. Pa. Sept.

17, 2002) and *Allen v. Verizon Pa., Inc.*, 418 F. Supp. 2d 617 (M.D. Pa. 2005).[1] These cases are not binding on this Court and factually distinct from the current matter.

In *Norman*, a Western District of Pennsylvania court denied summary judgment when the interactive process broke down after an employer rejected the employee's requested accommodation and offered two alternatives which were rejected by the employee. 2002 WL 32194730, at *14. The plaintiff in *Norman* fully engaged in the interactive process with her employer. *Id.* at *15. She responded to her employer's alternatives and rejected them, giving reasoning for her action. *Id.* at *2. The court in *Norman* also had doubts as to the good faith nature of the employer's alternatives accommodations. *Id.* at *17. It had categorically rejected the plaintiff's reasonable accommodation without any consideration then failed to continue to pursue other accommodations after its alternatives were rejected. *Id.* Ransom-Ellison, in contrast, was presented with four alternatives, and did not explicitly reject or accept them. She did not explain why each option would not work for her needs. Had she rejected the options, giving reasons for why they did not work, and engaged in further discussion then CHOP failed to offer her any accommodation, she could have a claim at that point. But she did not take those actions. Instead, she caused a breakdown in the process because of her lack of communication, thus distinguishing the *Norman* case from the current matter.

In *Allen*, an employer alleged the plaintiff "did not properly participate in the interactive process" by not taking steps to identify particular equipment that would accommodate her disability. 418 F. Supp. 2d at 623-24. The Middle District of Pennsylvania rejected this argument because it found there were multiple breakdowns in the interactive process and the issue of which side committed bad faith was a genuine dispute of material fact that hinged on credibility. *Id.* at 624. It

---

[1] Ransom-Ellison did not cite to these cases in her briefings on the Motion for Summary Judgment. Instead, Plaintiff's counsel brought the two cases to the Court's attention during the December 16, 2025 oral argument.

characterized plaintiff's participation in the interactive process as weak but did not reach the level of bad faith at the summary judgment stage. *Id.* Again, in Ransom-Ellison's case, she did not respond at all and is undisputedly responsible for the breakdown in the interactive process.

Neither of these nonbinding cases support denying summary judgment on this claim based on the factual record. The Court will therefore dismiss Ransom-Ellison's failure to accommodate claim because she was responsible for the breakdown in the interactive process and cannot prove CHOP acted in bad faith.

The Court now turns to Ransom-Ellison's claim for discriminatory and retaliatory termination. Disability discrimination and retaliation cases are subject to the *McDonnell Douglas* burden-shifting framework. *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 668 (3d Cir. 1999) (applying the framework to ADA discrimination claims); *Canada*, 49 F.4th at 346 (applying the framework to retaliation claims). Under this framework, a plaintiff must prove their prima facie case of discrimination or retaliation, which if proven, shifts the burden to the defendant to establish a legitimate, non-discriminatory or non-retaliatory justification for their action. *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996). If established, the burden shifts back to the plaintiff to show that the defendant's justification is pretextual. *Id.*

To prove a prima facie claim of discrimination under the ADA, a plaintiff must show "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor*, 184 F.3d at 306 (citation omitted). A prima facie claim of retaliation under the ADA requires allegations that (1) a plaintiff be engaged in a "protected activity," (2) the plaintiff be subjected to an adverse employment action, and (3) a causal connection between the protected activity and the adverse employment action exists. *Canada*, 49 F.4th at 346. Protected activity under the ADA

includes retaliation against an employee for requesting an accommodation. *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003). Discrimination and retaliation claims brought under the PFPO are governed by the same analysis as those brought under the ADA. *See Bowdren v. Cristo Rey Phila. High Sch.*, No. 22-4716, 2023 WL 3362580, at *4 (E.D. Pa. May 10, 2023).

Assuming Ransom-Ellison has a prima-facie case of discrimination and retaliation, she failed to present evidence of pretext to overcome a motion for summary judgment. "In order to defeat a summary judgment motion after the defendant answers [the] plaintiff's prima facie case with legitimate, nondiscriminatory reasons for its action, the plaintiff must 'point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Olson*, 101 F.3d at 951 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

CHOP's proffered nondiscriminatory and nonretaliatory reason for the termination was that Ransom-Ellison has exhausted her FMLA leave, and the pharmacy team needed to fill the role "in order to sustain operations given the increase in the census that was occurring and that was expected to occur given the fall/winter upper respiratory season that had already commenced." Alston Decl. ¶ 37; Patel Dep. 31:2-13.

Ransom-Ellison argues this reason is pretextual because of the hiring and onboarding timeline of her replacements. CHOP hired two people to Ransom-Ellison's former position: Jonathan Williams who started on December 27, 2022 and Leandra Cruz who started on January 23, 2023. Ransom-Ellison contends if there had been a business need to fill her position, her replacements would have started working earlier than the same day she was scheduled to return from leave on January 23, 2023.

Although timing can be evidence of pretext, "there must be some logical connection between the timing . . . and the possibility of the particular discrimination at issue." *See Walton*, 168 F.3d at 669. The timing of when Ransom-Ellison's two replacements started does not discredit or run contrary to CHOP's nondiscriminatory and nonretaliatory reasons. First, one of the replacements did start before Ransom-Ellison was slated to return from leave. Jonathan Williams started on December 27, 2022, so his start date does not aid Ransom-Ellison's argument. Second, a replacement starting work when Ransom-Ellison was scheduled to return is not contradictory to CHOP's reason for termination. This timeline could have been the quickest feasible manner to get a replacement and does not directly attack the rationale behind CHOP's reason. *See, e.g.*, *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 680 (10th Cir. 2021) (finding plaintiff contention "that the [employer] did not need her immediate return to work because it would take six to eight weeks to fill her position" is insufficient to demonstrate pretext because "this says nothing about whether the [employer] actually terminated [the plaintiff]'s employment in retaliation for her requests for accommodation").

Additionally, while Ransom-Ellison was scheduled to have her leave expire by January 23, 2023, she was not scheduled to come back to work on that day. Alston Decl. ¶¶ 28, 31. She further could not return to the same role at the schedule demanded because her request for an altered schedule was still outstanding with no resolution because of her lack of participation in the interactive process. Ransom-Ellison Dep. 234:4-13, 241:23-24; Darden Letter, Dkt. No. 15-7 at 438 (stating Ransom-Ellison's reasonable accommodation was necessary from November 14, 2022 to May 14, 2023); *see, e.g.*, *Herrmann*, 21 F.4th at 680 ("[A]t the time of the decision, the [employer] had no idea whether [the plaintiff] could return to work.").

Ransom-Ellison also does not provide any evidence of her claim beyond pointing to the timing of her replacement's onboarding. She does not point to any reason to why her replacement

actually commenced employment on January 23, 2023.  She merely speculates that CHOP could and would have hired and onboarded someone faster if they truly required the position to be filled. "Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Lexington Ins. Co.*, 423 F.3d at 333 (quoting *Hedberg*, 47 F.3d at 932).  A factfinder could not reasonably "disbelieve [CHOP]'s articulated legitimate reasons" or "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [CHOP']s action" solely based on Ransom-Ellison's speculation on the onboarding timing of her replacements.  *Olson*, 101 F.3d at 951 (quoting *Fuentes*, 32 F.3d at 764).  Because of the lack of evidence and speculation Ransom-Ellison uses to demonstrate pretext, her discrimination and retaliation termination claim fails. *See, e.g.*, *Fahnestock v. Carlisle Reg'l Med. Ctr.*, 659 F. App'x 75, 78 (3d Cir. 2016) (finding the arguments about the circumstances surrounding plaintiff's replacement "assuming the position full-time, when the original plan was to hire [the replacement] on an as-needed basis" is "mere speculation, and speculation does not create a genuine issue of fact").

The Court finally turns to Ransom-Ellison's claim for discriminatory and retaliatory failure to hire.  Ransom-Ellison asserts that after she was replaced as a pharmacy technician, she applied for various other positions with CHOP and was not hired because of her disability and previous requests for reasonable accommodations.  This claim fails because the CHOP employees, with hiring authority who considered her applications, did not know about her disability or previous protected activity.  To make a prima facie case of employment discrimination based on disability, the plaintiff must demonstrate that she has a disability.  *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 (3d Cir. 2002); *Olson*, 101 F.3d at 951.  The Third Circuit has held that this requirement necessarily implies the plaintiff also must demonstrate the employer knew of their disability.  *Jones v. UPS*, 214 F.3d 402, 406 (3d Cir. 2000) ("It is, of course, an axiom of any ADA claim that the plaintiff be disabled

and that the employer be aware of the disability."); *see also Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002) ("[Plaintiff] cannot establish discrimination under the ADA because [his employer] did not know about his disability.").

In *Olson*, the Third Circuit further explained that knowledge of one party working for the defendant employer cannot be imputed to another who is making the hiring decision.  101 F.3d at 954; *see also Straining v. AT&T Wireless Servs., Inc.*, 144 F. App'x 229, 232 (3d Cir. 2005).  If the employees responsible for hiring disclaim knowledge of a disability, then the plaintiff must present evidence to the contrary because a "theory of imputed knowledge . . . based upon sheer speculation," is "insufficient to raise a genuine issue of material fact."  *Olson*, 101 F.3d at 954.  These principles also apply to retaliation claims when a plaintiff fails to present evidence that a decisionmaker knew of their prior protected activity.  *See Jones v. Sch. District of Phila.*, 198 F.3d 403, 415 (3d Cir. 1999) (affirming summary judgment for defendant on a retaliation claim because plaintiff produced no evidence showing defendant's employees knew of plaintiff's prior EEOC filings); *Kania v. Potter*, 358 F. App'x 338, 344 (3d Cir. 2009) (applying *Olson* to affirm a dismissal when the plaintiff "produced no evidence demonstrating that [the relevant decisionmaker] was aware of [plaintiff]'s grievances or his complaint").

CHOP's talent acquisition staff were responsible for reviewing Ransom-Ellison's applications and deciding not to move her forward.  Hiller Decl. ¶¶ 10-12.  These employees disclaim any knowledge of Ransom-Ellison's disability or prior protected activity. *Id.* ¶ 13.  Ransom-Ellison in turn does not present any evidence to dispute this fact and Plaintiff's counsel at oral argument conceded this point.  Any "theory of imputed knowledge" that Ransom-Ellison might rely on to prove the talent acquisition staff knew about her disability or protected activity would only be "based upon sheer speculation." *Olson,* 101 F.3d at 954.  Because Ransom-Ellison "failed to establish that those involved in the hiring decision knew of her disability" and protected activity, she fails "to

13

make out a necessary element of her prima facie case." *Straining*, 144 F. App'x at 232; *see also*

*Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 505 (3d Cir. 1997) (discussing lack of knowledge by the

decisionmaker regarding plaintiff's protected activity in affirming dismissal on summary judgment).

Summary judgment dismissal is therefore appropriate for this claim as well.

**CONCLUSION**

Accordingly, the Court will grant CHOP's motion for summary judgment in full and dismiss

Ransom-Ellison's claims.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.